IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACE SMITH, MICHAEL O. SMITH, J.A. SMITH (minor),<br><br>Plaintiffs,<br><br>v.<br><br>OBHG PA & Dr. Teresa Marlino<br><br>Defendants. | *IN RE* SMITH *et. al.* v. ST. LUKE'S HOSPITAL, *et. al.*<br><br>CASE NO. 5:22-cv-03786-MMB<br><br>**PLAINTIFFS' RESPONSE BRIEF TO DEFENDANTS' MOTION TO DISMISS** |

**Plaintiffs' Response to Motion to Dismiss by Defendants OBHG PA and Dr. Marlino**

1. The Plaintiffs, Michael O. Smith, Grace Smith, and J.A. Smith, request the Court DENY Defendants OBHG PA and Dr. Marlino's Motion to Dismiss for the following reasons:

   a. The Defendant claims the confrontation between the Plaintiff Smiths and the Defendant Marlino took place on Monday, April 12th, 2021, and proceeds to argue that all of his points are in relation to that time period; that date is incorrect and the confrontation between the Smiths and Dr. Marlino took place on Friday, April 9th, 2021; therefore all of the Defendants' points are moot as they are in relation to an irrelevant time period.

   b. Defendant Mrs. Smith had not ever tested positive for methamphetamine, and nor has Baby J.A.S., and testing positive for legally prescribed amphetamines is not a valid legal basis for a child abuse accusation, let alone separation of a baby from its parents.

   c. Defendants fail to provide any evidence that supports the position that Mrs. Smith consumed methamphetamine and passed its deleterious effects onto Baby J.A.S.;

however, Plaintiffs provide convincing evidence in the form of a hair follicle drug test that Mrs. Smith did not ever consume methamphetamine.

d. In an attempt to sully the reputation of the Smiths as violent child abusers Dr. Marlino lied in medical records by stating that Mrs. Smith tested positive for drugs "[she] could have gotten off the street" according to Dr. Marlino.

e. Dr. Marlino acted as a ringleader by coordinating efforts to separate Mr. and Mrs. Smith from Baby J.A.S. and in doing so, made herself a state actor in the roles of prosecutor, social worker, social worker administrator, local magistrate, law enforcement administrator, jailer, and/or warden.

f. Since the *ADA* exists to protect people with valid disabilities even when medication is taken to remedy the symptoms of the disability, that individual is still legally disabled; therefore, since Mrs. Smith's legal amphetamine use was the basis to separate her and Mr. Smith from her child by Dr. Marlino, the Smiths have provided a valid prima facie case; and, in an *ADA* case the burden of proof is on the Defendant to provide clear exculpating evidence, and, the Defendants have not provided such evidence.

g. Dr. Marlino does not enjoy the benefit of any "conditional privilege" because she did not enter valid medical information into medical records, but instead intentionally mislead others via a concocted narrative that the Smiths were child abusers without any legally valid cause with the intent to harm the reputation of the Mr. and Mrs. Smith.

h. According to Mr. Jorge Manteria, Monroe County CYS social worker, a second report by Dr. Marlino to Monroe County CYS exists in which she lambasts Mr. Smith as being a terrifying man of violent character, which is a document which could shed substantial light on the nature of why Mr. Smith was treated as negatively as he was by St. Luke's

      Hospital, and why Mr. Manteria was shaking with fear when he first approached Mr. Smith at the Smith household on the morning of Monday, April 12th, 2021.

  i. Dr. Marlino's actions towards the Smiths could easily "shock the conscience" of any reasonable juror; and since this is the only element contested by Defendants, the IIED claim should remain through to discovery.

  j. In claiming that OBHG PA was not an operator at St. Luke's Hospital, whilst still sending bills to the Smiths in relation to the actions of Dr. Marlino during the period in question, OBHG PA has committed mail fraud.

### Evidence Presented for Clarity and the Court's Edification

2. Here the Plaintiffs present persuasive documentary evidence that the Smith's version of events is valid and that each of their claims should survive the Defendants' Motion to Dismiss:

a. **Exhibit 1, Plaintiff's Response Brief**: Plaintiff's Responsive Brief to the Defendant's Motion to Dismiss is now incorporated for reference herein to this Response.

b. **Exhibit 2, Grace Smith's Hair Follicle Test**: Plaintiff incorporates this evidence herein to demonstrate that Mrs. Smith had not ever consumed methamphetamine.

c. **Exhibit 3, Monroe County Children & Youth Services "Letter of Exculpation"**: Plaintiff incorporates this evidence herein to further demonstrate that the State concluded that neither Mr. nor Mrs. Smith presented a risk of harm to Baby J.A.S. at any time..

d. **Exhibit 4A and 4B, Newborn Baby J.A.S. Selected Medical Records**: Plaintiff incorporates this evidence herein to demonstrate that Baby J.A.S. was born healthy and without fluid in his lungs. Attached are Baby J.A.S. medical records from his first day where his good health is recorded. Also included are records from the radiologist which examined Baby J.A.S.'s lung x-rays, which demonstrate that at no time was there "fluid in Baby

J.A.S.'s lungs" as alleged by the Defendants.

e. **Exhibit 5, Newborn Baby J.A.S. Selected Medical Record**: These notes from Dr. Schultz demonstrate that Dr. Marlino was coordinating multiple parties against the interests of the Plaintiff Smiths, and that she had the authority to give orders to other hospital personnel and staff.

f. **Exhibit 6, Newborn Baby J.A.S. Selected Medical Record**: This is the umbilical cord test report which clearly shows that there was not any illegal substances passed onto Baby J.A.S. in-utero.

g. **Exhibit 7, Mrs. Smith Selected Medical Record**: These notes by Dr. Marlino demonstrate that she falsified medical records to bring harm to the Smith Family.

h. **Exhibit 8, Mrs. Smith Selected Medical Record**: These are the undifferentiated urinary amphetamine/methamphetamine drug screens that Mrs. Smith was subjected to against her consent in St. Luke's Hospital.

i. **Exhibit 9, Police Report filed by Dr. Marlino**: This report is included to demonstrate that Dr. Marlino was coordinating the actions of individuals beyond the hospital. This demonstrates that Dr. Marlino is directly responsible for calling the police and filing a false police report to effectuate the separation of Plaintiffs Mr. and Mrs. Smith from Baby J.A.S.

j. **Exhibit 10, Medical Bill by OBHG PA**: This bill is included to demonstrate that OBHG PA are indeed "operators" at St. Luke's Hospital or that OBHG PA is committing fraud by illegally billing people for services.

**Conclusion–All Allegations Made by the Plaintiffs Should Survive a Motion to Dismiss to Enter the Discovery Phase**

3. Plaintiffs pray that this Honorable Court will see the Plaintiffs through to discovery for each of

the claims presented in their Complaint.

4. In addition, since Defendant OBHG PA admits to potential fraud by claiming not to be an operator at St. Luke's Hospital while simultaneously billing for actions its employees undertook at St. Luke's Hospital, Plaintiffs respectfully request leave to Amend their Complaint to add a corresponding fraud claim.

Respectfully submitted to the Court by,

*Michael O. Smith*

Michael O. Smith, pro se plaintiff

*[signature]*

Grace Smith, pro se plaintiff

Dated December 15, 2022

**Certificate of Service**

Plaintiffs hereby certify that on this date the foregoing document with attached exhibits was served on defendants' counsel of record via USPS:

James A. Doherty, Jr. Esquire
217 Wyoming Ave.
Scranton, PA 18503

Signed,

*Michael O. Smith*

Michael O. Smith                                                                 Grace L. Smith, Esq.

*December 15th, 2022*