**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GRACE SMITH et al.,**<br>*Plaintiffs,*<br><br>                    **v.**<br><br>**DR. TERESA MARLINO, MD et al.**<br>*Defendants.* | **CIVIL ACTION**<br><br>**NO. 22-3786** |

<u>**MEMORANDUM OF DECISION**</u>

**BAYLSON, J.**                                                    **February 3, 2023**

## I.      INTRODUCTION

This case addresses the separation of parents from their newborn child because of an allegedly dubious positive drug test result. Defendant Teresa Marlino, a doctor at St. Luke's Hospital, allegedly told two police officers that Grace Smith tested positive for methamphetamines. Mrs. Smith, however, alleges that the positive result came from her prescribed use of a legal amphetamine, which she had allegedly disclosed before the test. While Mrs. Smith was allegedly cleared of any accusations of methamphetamine abuse of her unborn child by the county's Children and Youth Services ("CYS"), Plaintiffs allege that the separation of parents and child during the investigation was a constitutional violation for which Dr. Marlino and her co-defendant employer, OBHG PA Pennsylvania, PC ("OBHG PA"), should be held liable. While separation from a newborn child is undoubtedly a traumatic experience for parents, Plaintiffs have failed to state valid claims against these Defendants.

From the facts alleged, it is doubtful that plausible claims could be asserted. The extent of Dr. Marlino's involvement in Plaintiffs' case is unclear, but it appears that she was involved in preparing several medical reports, informing Plaintiffs of the results of the test, and discussions

1

with Bethlehem Township police.  Beyond that, her alleged involvement is largely speculative.
Plaintiffs' attempts to pin greater responsibility on either Defendant here are conclusory and
devoid of specific, plausible allegations.  This is Plaintiffs' fourth bite of the apple.  Based on the
claims and allegations asserted here, the Court will dismiss the federal claims of Plaintiffs Mr.
and Mrs. Smith **with prejudice**.  Further, the Court will **decline** to exercise supplemental
jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.

However, the child's sole claim here – a federal one – is another matter.  The Third
Circuit has held that minors may not be represented by pro se parents who are not attorneys.
Osei-Afriyie by Osei-Afriyie v. Med. College of Pa., 937 F.2d 876, 878 (3d Cir. 1991)
(Hutchinson, J.).  While Mrs. Smith is an attorney of the Pennsylvania Bar, Mr. Smith – who is
not – represented the following to the Court in a Rule 16 hearing:

> "Mr. Smith: I've done almost everything for this case. I, I've written it from the,
> from the bottom of all 925 pages and the, and the brief and everything, getting it
> down from that to the 50 pages that it came down to was on me.  Now, don't get
> me wrong.  Grace, Mrs. Smith, absolutely, you know, reviewed all of the work.
> Okay?  And, and I'm not writing her out of anything but I just want to let you
> know who's been responsible for all of this."
>
> ECF 48, 15:12-20.

The Third Circuit has not explicitly ruled on whether *pro se* minors may be
represented by a parent who is an attorney.  But, at the very least, Mr. Smith's continued
representation of minor child J.A.S. is impermissible under Third Circuit precedent.
Moreover, the Court concludes that the parents are too conflicted to provide adequate
representation for their child's claim in this case.  The Court provides a detailed analysis
of these precise issues in its memorandum from a sister case arising out of the same
events and circumstances, filed contemporaneously with this memorandum.  See
Memorandum of Decision at 8-12, Smith et al. v. St. Luke's Hospital University

2

<u>Healthcare Network Anderson Campus, et al.</u> (2023) (No. 22-1478), ECF 60 (E.D.Pa February 3, 2023).

Under Federal Rule of Civil Procedure 17(c)(2), the Court must "issue [an] appropriate order to protect a minor or incompetent person who is unrepresented in an action." Fed.R.Civ.P.17(c)(2).  The Court deems that the appropriate order is as follows: the federal claim of minor child J.A.S. is dismissed **without prejudice** and **with leave** for the Smith family to do one of the following within thirty (30) days: (1) obtain counsel to represent the minor child; or (2) petition the court of common pleas of the appropriate Pennsylvania County with jurisdiction over minor child J.A.S. for appointment of a guardian *ad litem*. [1]

## II.   SUMMARY OF FACTUAL ALLEGATIONS

On April 8th, 2021, Plaintiff Grace Smith gave birth to a child, J.A.S., at St. Luke's Hospital Anderson Campus.  Compl. ¶ 6.  Upon her intake that afternoon, Mrs. Smith allegedly

---

[1]     The Court does not believe that an order appointing a guardian *ad litem* for the minor child's federal claim in this court is the appropriate solution to best protect the rights of the child. One reason specific to Plaintiffs' case against moving Defendants is that underlying the child's only claim - a facially deficient federal claim - is a state law claim that is not so clearly deficient. As detailed below, Plaintiffs rely on § 1983 as a cause of action, but fail to establish that Dr. Marlino's alleged violations supporting this claim occurred under color of state law.  <u>See infra</u>, Section V.A.  This is fatal to the parents' claim and based on the allegations in this case to date, the Court is skeptical that any representative of the child could muster plausible allegations that Dr. Marlino acted under color of law in allegedly failing to conform with notice requirements of Pennsylvania statutes.  Yet some of those violations of Pennsylvania statues could conceivably support viable causes of action in state court.

Accordingly, the Court believes that the most appropriate way to protect the child's rights would be for Plaintiffs to petition for the appointment of a guardian *ad litem* in state court, so that the child's state law claims may be pursued there alongside the surviving state law claims of the parents.  If Mr. and Mrs. Smith disagree, they may retain counsel for their child within thirty days and continue to pursue his procedural due process claim in this Court.

provided staff with medical history, including her prescription medication Vyvanse, an amphetamine used to treat ADHD.  Id. ¶ 7.  Mrs. Smith's rapid drug screen upon intake came back "positive" for amphetamines/methamphetamines.  Id. ¶ 8.  Plaintiffs allege this is due to her legal and prescribed Vyvanse use and that the test failed to distinguish the legal amphetamine from illegal methamphetamine.  Id.  On April 9th, allegedly upon the recommendations of other doctors at St. Luke's Hospital, J.A.S. was admitted to the NICU, purportedly in response to medical readings such as his pulse ox levels.  Id. ¶ 37.  Medical personnel at St. Luke's Hospital may have suspected that Baby J.A.S. was suffering from methamphetamine withdrawal.  Id. ¶ 42.

That evening, Dr. Marlino allegedly informed the parents that Mrs. Smith's urine test came back positive for methamphetamines. Id. ¶ 43.  Both parents allegedly insisted that the results were caused by Vyvanse and demanded to see the test results.  Id. ¶ 44.  The employees of St. Luke's Hospital allegedly refused and did not contact her treating physicians for confirmation.  Id. ¶¶ 44-45.  Based on this positive test, Dr. Marlino allegedly informed the Smith parents that CYS had to "clear" them before the hospital could return J.A.S. to their custody.  Id. ¶ 71.  Based on the false positive result, police demanded that the parents to leave the hospital under threat of arrest.  Id. ¶ 46.

Dr. Marlino made a report – which allegedly subsequently reached CYS – representing that Mr. Smith had been aggressive towards Dr. Marlino during these events and that Mrs. Smith had tested positive for methamphetamines.  Id. ¶ 80.  Allegedly, the references to Mr. Smith's aggression were subsequently disclosed by the CYS worker who appeared at Mr. Smith's residence on April 12th, and who admitted that he considered taking police with him during the initial visit to the residence out of fear for his safety.  Id.

4

Plaintiffs allege that Mrs. Smith was only given access to her child in the NICU under supervision of security guards (who were male) on the evening of April 10, 2021.  Id. ¶ 49. Plaintiff Mrs. Smith further alleges that she was informed that her supervision was for "inappropriate behavior" and that Mr. Smith was not permitted on the premises.  Id. ¶ 49-50.  On April 12, 2021, Baby J.A.S. was returned to the Smith parents to take home.  Id. ¶ 84.

## III.     RELEVANT PROCEDURAL HISTORY

To this point, Plaintiffs have proceeded pro se in this matter.  Plaintiffs proceeded initially in a separate docket, Docket No. 22-1478.[2]  On April 11, 2022, Plaintiffs filed an initial complaint, filed in the original docket.  ECF 2.  The initial complaint was nine-hundred and twenty-five (925) pages long and featured allegations against thirty-nine (39) defendants, including moving Defendants, arising out of the same events and occurrences as this case.

On June 16, 2022, the Court ordered Plaintiffs to file an amended complaint within thirty days.  ECF 21.  Plaintiffs filed the first amended complaint on June 22, 2022.  ECF 34.  This complaint was nine-hundred and twenty-six (926) pages long and listed numerous defendants, again including moving Defendants.

On June 29, 2022, the Court ordered that Plaintiffs file an amended complaint limited to fifty (50) pages double-spaced.  ECF 37.  On July 11, 2022, Plaintiffs filed a second amended complaint, again including moving Defendants.  ECF 41.  This complaint was fifty-one (51) pages long, with an accompanying brief that was forty-five (45) page long.

---

[2]      Until specified below, the ECF numbers in this procedural history correspond to the docket from the original case, Docket No. 22-1478.

On July 14, 2022, the Court held a Rule 16 hearing, in which the Court ordered that any subsequent complaint be limited to fifty (50) pages double-spaced.  ECF 42.[3]  The Court also stated that Plaintiffs could file separate complaints against different groups of Defendants.  Id. On the same date, the Court ordered that the second amended complaint be stricken from the record and allowed Plaintiffs to file a third amended complaint.  ECF 43.  On September 14, 2022, Plaintiffs filed a third amended complaint.  ECF 45.  For the first time, neither moving Defendant was listed as a defendant.

From September 22, 2022 onwards, all filings related to Dr. Marlino and OBHG PA were filed under the present docket number, 22-3786.[4]  On that date, Plaintiffs filed their initial complaint in this case against moving Defendants alone.  ECF 1.  Defendant filed the instant Motion to Dismiss on November 28, 2022.  ECF 11.  After an extension of time, Plaintiffs filed their response to the motion with the Court on December 16, 2022.  ECF 15.

IV.    **LEGAL STANDARD**

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff.  Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020).  To survive this motion, a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662,

---

[3]     The transcript of this Rule 16 hearing is filed as ECF 48.
[4]     Accordingly, the remaining ECF numbers in the procedural history section correspond to the instant docket.

678-79 (2009) (citing <u>Twombly</u>, 550 U.S. at 555).  To survive the motion, a plaintiff must "plead

'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to

draw the reasonable inference that the defendant is liable for misconduct alleged.'"  <u>Warren Gen.</u>

<u>Hosp. v. Amgen, Inc.</u>, 643 F.3d 77, 84 (3d Cir. 2011) (quoting <u>Fowler v. UPMC Shadyside</u>, 578

F.3d 203, 210 (3d Cir.2009)).

## V.     DISCUSSION

Plaintiffs assert six claims against moving Defendants.[5]

A.  <u>Violation of Fourteenth Amendment Procedural Due Process</u> under 42 U.S.C. § 1983
    (all plaintiffs against both moving Defendants).

B.  <u>Violation of Fourteenth Amendment Equal Protection Clause</u> – Discrimination based
    on Sex under 42 U.S.C. § 1983 (Mrs. Smith v. both moving Defendants).

C.  <u>Violation of Title III of the Americans with Disabilities Act (ADA)</u> – Discrimination
    by a Place of Public Accommodation (Mrs. Smith v. OBHG PA).

D.  <u>Defamation under 42 Pa. C.S. § 8343</u> (Mr. Smith v. both moving Defendants).

E.  <u>Defamation under 42 Pa. C.S. § 8343</u> (Mrs. Smith v. both moving Defendants).

F.  <u>Intentional Infliction of Emotional Distress</u> (Mr. & Mrs. Smith v. both moving
    Defendants).

The three federal law claims are deficient as pled and will be dismissed with prejudice.

The Court will therefore decline pendant jurisdiction of the three state law claims.

---

[5]     Plaintiffs allege that OBHG PA is responsible for most claims under the doctrine of
*respondeat superior*.

A.      **Fourteenth Amendment Procedural Due Process**

Plaintiffs allege that Dr. Marlino failed to comply with several Pennsylvania statutes

regarding procedural requirements when taking a child into protective custody.  As a preliminary

matter, most of the statutory provisions Plaintiffs insist were violated by Dr. Marlino impose

duties on the county agencies, not private individuals.[6]   But even if at least one provision could

apply to individuals such as Dr. Marlino, Plaintiffs fail to plead specific facts showing that she

(or OBHG PA) was the party who took custody of J.A.S and was thereby subject to such duties.

Plaintiffs ask the Court to infer from Dr. Marlino being "listed in medical records by herself as

having been a key decision maker for OBHG PA in regards to the Smith situation" and holding

"a supervisory position within the St. Luke's Hospital/OBHG PA hierarchy" that she was

responsible for various decisions which adversely affected the Smiths, such as the decision to

separate the family.  Compl. ¶ 285.  This is simply too vague and conclusory for the Court to

make such an inference.

Moreover, § 1983 claims can only be asserted against private actors if they act "under

color of state law."  42 U.S.C. § 1983.  Even if the decision to take custody of the child was

arguably made under color of state law, Plaintiffs' allegations do not adequately tie Dr. Marlino

---

[6]      Based on the plain language, 23 Pa. C.S. § 6315(a)(4) applies to a county agency, not
individuals.  23 Pa. C.S. § 6315(b) imposes the allegedly violated duty to obtain a court order on
the county agency, not individuals.  23 Pa. C.S. § 6315(f) requires that the underlined employee designated
by the county agency to be responsible for the child hold a conference with the parents, not any
individual.  Plaintiffs offer no allegations to suggest that Dr. Marlino was designated by the
county agency to be responsible for J.A.S.
        The only statutory procedural due process violation alleged that could even apply to an
individual such as Dr. Marlino is 23 Pa. C.S. § 6315(c), which imposes a duty to provide notice
in writing regarding the whereabouts of J.A.S. and the rationale for protective custody.
        The only provision cited by Plaintiffs that could even debatably apply to OBHG PA
directly is 28 Pa. C.S. § 137.21(12).  Plaintiffs' cursory allegation of violation of that statute is
utterly deficient, lacking in even threadbare allegations to support it.  See Compl. ¶ 126-28.

to this decision.  Plaintiffs argue that § 1983 is nevertheless the appropriate statute because "Dr. Marlino acted as a ringleader by coordinating efforts to separate Mr. and Mrs. Smith from Baby J.A.S. and in doing so, made herself a state actor in the roles of prosecutor, social worker, administrator, local magistrate, law enforcement administrator, jailer, and/or warden."  Compl. ¶ 90-93; Resp. ¶ 1e.  Behaving in a supposedly "prosecutorial" manner is not the same as being a prosecutor.  These vague and conclusory allegations fail, and this claim will be dismissed with prejudice as to Plaintiffs Mr. and Mrs. Smith.  The claim of minor child J.A.S. will be dismissed without prejudice as discussed above.  See supra, Section I.

### B.       Fourteenth Amendment Equal Protection – Discrimination Based on Sex

Mrs. Smith alleges that by drug testing the mother, but not the father prior to childbirth during initial screening, Dr. Marlino and OBHG PA were responsible for discrimination based on sex.  This claim fails on multiple grounds.  First, no factual allegations come close to suggesting the hospital's drug testing procedures were made under color of state law and thus Mrs. Smith cannot sue for this alleged discrimination under § 1983.  Second, Plaintiffs fail to allege specific facts showing that either Dr. Marlino or OBHG PA were at all responsible for the allegedly discriminatory testing procedures.  No factual allegations suggest that Dr. Marlino authorized the test, nor otherwise made the decision to test Mrs. Smith, nor conducted it herself. The alleged facts only suggest that she reported the drug test to the family and subsequently discussed the result with the police officers on the scene.  The claim is deficient on its face and will be dismissed with prejudice.[7]

---

[7]       Even if this claim was otherwise viable, the Court adds that there would be a plausible justification for any such testing policy that would likely survive constitutional scrutiny. Pregnant mothers share blood with the fetus.  Fathers do not.  But the Court need not reach such analysis here due to the other two dispositive deficiencies in this claim.

**C.     Title III of the Americans with Disabilities Act – Discrimination by a Place of Public Accommodation**

Relatedly, Mrs. Smith alleges that the testing procedures employed by OBHG PA discriminated against her based on her ADHD disability because they failed to distinguish her legal amphetamine prescription sufficiently from illegal methamphetamines in both their testing and reporting.  Again, Plaintiff Mrs. Smith fails to offer adequate allegations that OBHG PA was responsible for the drug testing procedures employed by St. Luke's Hospital or the report to CYS.  No specific facts are alleged to tie OBHG PA to these events beyond its billing of Plaintiffs for unspecified services (allegedly related to the events at issue) and its employment of Dr. Marlino.[8]  Without such factual allegations, this claim cannot survive.[9]

**D.     Supplemental Jurisdiction**

Since the Court will dismiss all three claims over which it has original federal question jurisdiction, it has discretion to decline to exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.  Accordingly, the Court will decline to exercise supplemental jurisdiction over the state law claims, which are more suitable for state court disposition.

**VI.     CONCLUSION**

Plaintiffs' allegations, if true, illustrate that the Smith family experienced a legitimate hardship deserving of the Court's sympathy.  But the claims levelled against moving Defendants

---

[8]     Plaintiffs offer a conclusory allegation that it would have been Dr. Marlino who reported the test result to CYS.  Compl. ¶ 140.  They offer no factual allegations to support this supposition.

[9]     The parties dispute whether OBHG PA "operates" a place of public accommodation by offering services at St. Luke's Hospital.  Any such analysis is premature given the lack of specific allegations tying OBHG PA to the testing and reporting at all.

continue to be wholly insufficient as a matter of law.  None of the allegations in this fourth complaint of Plaintiffs suggest that these two Defendants can be held liable for the claims asserted against them.

Accordingly, the Court will dismiss the federal claims of Mr. and Mrs. Smiths with prejudice.  The Court will decline to exercise pendant jurisdiction over the remaining state law claims.  The Court will dismiss the remaining procedural due process claim of minor child J.A.S. without prejudice and with leave to either: (1) obtain counsel to represent the minor child; or (2) petition the Court of Common Pleas of the appropriate Pennsylvania County with jurisdiction over minor child J.A.S. for appointment of a guardian *ad litem*.  An appropriate order follows.